UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------

|                                          |   |                          |
|------------------------------------------|---|--------------------------|
| UNITED STATES OF AMERICA,                | : | CASE NO. 1:04CR580       |
|                                          | : |                          |
| Plaintiff,                               | : |                          |
|                                          | : |                          |
| vs.                                      | : | OPINION AND MEMORANDUM   |
|                                          | : | [Resolving Doc. No. 204] |
| NATHANIEL GRAY, et al.,                  | : |                          |
|                                          | : |                          |
| Defendants.                              | : |                          |
|                                          | : |                          |

------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Pending before the Court is Defendant Nathaniel Gray's Motion to Inspect Government Suppressed Applications, Orders, and Intercepts. [Doc. 204]. The Government has not filed a memorandum opposing Gray's Motion to Inspect. Gray asks to inspect 60 days' worth of various intercepted communications, surveillance applications, and orders that the Government sealed. The Government self-sealed the materials after discovering defects in the Government's applications.

For the reasons discussed below, the Court **DENIES** Gray's Motion to Inspect.[1]

I. Background

Gray is one of the six defendants named in the superseding indictment. Gray faces charges of Hobbs Act conspiracy, Hobbs Act violations, and honest services mail and wire fraud. Gray also faces

---

[1] Defendant Monique McGilbra raised many of the same arguments as Gray in her Motion to Inspect "Self-Suppressed" Wiretaps, Applications, and Orders. [Doc. 145]. The Government opposed McGilbra's Motion to Inspect [Doc. 183], and McGilbra replied. [Doc. 252]. McGilbra has since pled guilty and withdrawn her Motion to Inspect.

Case No. 1:04CR580
Gwin, J.

a RICO conspiracy charge and a charge of evasion of payment of income taxes.

The Government expects to use communications obtained through wiretaps and other electronic surveillance as evidence at trial. On January 28, 2005, the Government informed the defendants by letter that there were legal defects in certain of its surveillance applications. The Government wrote:

> In this multidistrict investigation, there were two separate periods of court ordered electronic surveillance. With respect to the first 90-day period of court ordered interceptions only, please be advised that the last 60 days of wiretap evidence has been self-suppressed by the United States due to the fact that there was a technical defect in certain limited applications made to the Court. The defect was that, while all proper executive branch approvals had been obtained for the original court ordered surveillance, two 30-day renewal applications were presented to the court and the court made its probable cause determination without prior executive branch approval from the proper Department of Justice official in Washington, D.C.

[Doc. 183 at 3].

The Government acknowledges that the defects in the applications rendered the surveillance during the 60 day period illegal. The Government says that neither the prosecutors nor any investigative agents now assigned to the case reviewed any of the communications intercepted during the last 60 days of the surveillance period. The Government disclosed its error to the Court and sealed all such information and materials. The Government then removed from the case all agents and counsel who reviewed any of the sealed materials. The Government obtained new court authorization to conduct electronic surveillance after the 60 day period ended.

Defendant Gray now seeks to review all of the sealed materials.

II. Analysis

Case No. 1:04CR580
Gwin, J.

Defendant Gray offers five arguments in support of his motion: (1) the material is discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963); (2) the material is discoverable under Fed. R. Crim. P. 16; (3) the material is discoverable under various judicial exceptions to Title III; (4) 18 U.S.C. § 2518(8)(d) permits the disclosure; and (5) the Jencks Act, 18 U.S.C. § 3500, requires disclosure of the recorded statements of Government witnesses.

*A. Title III Prohibitions*

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, prohibits the use or derivative use of unlawful wiretap information by anyone in any court proceeding. Specifically, section 2515 provides:

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in any trial, hearing, or other proceeding in or before any court . . . if the disclosure of that information would be in violation of this chapter.

18 U.S.C. § 2515. Section 2511(1) establishes that the intentional use or disclosure of unlawfully obtained wiretap information is a felony punishable by up to five years' imprisonment. *Id.* §§ 2511(1)(c), (d). The parties agree that the Government unlawfully obtained the disputed intercepts.

The prohibitions apply equally to the prosecution and the defense. Read together, the statutes protect the legitimate "privacy of wire and oral communications" and unlawfully surveilled individuals, as well as "the integrity of court and administrative proceedings." *Gelbard v. United States*, 408 U.S. 41, 51 (1972).

*B. Brady Material*

-3-

Case No. 1:04CR580
Gwin, J.

Gray argues that the sealed tapes are discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963). The Court disagrees. *Brady* generally requires the Government to disclose to the defendants material that is exculpatory or evidence that is favorable to them. *Brady* does not trump all other evidentiary considerations. Regarding unlawful surveillance, section 2515 of Title III prohibits both the prosecution and the defense from using any portion of the intercepted communications, and all evidence obtained therefrom, at trial. *See* 18 U.S.C. § 2515. Title III also prohibits the disclosure and use of unlawful surveillance in most instances. *See id.* § 2511. As the disputed wiretaps were undoubtedly unlawful, Title III bars their use.

Additionally, even if Title III did not apply, the wiretap information would be hearsay under Rule 801(c) of the Federal Rules of Evidence, and could not be offered into evidence. Rule 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Because the recorded statements occurred out of court, the defendants could not use them to establish any matter stated therein. Even if the wiretaps contained exculpatory material, the defendants could not use them as evidence at trial. Additionally, Gray cannot show that examining the wiretaps is essential to his defense because the wiretaps captured conversations in which he participated. It follows that the wiretaps cannot contain any information Gray does not already know.

It is true that *Brady* gives criminal defendants the right to access inadmissible materials that are reasonably likely to lead to the later discovery of admissible exculpatory materials. *See United States v. Bergonzi*, 216 F.R.D. 487, 499 (N.D. Cal. 2003). But *Brady* does not provide unfettered access to the

-4-

Case No. 1:04CR580
Gwin, J.

Government's files. There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). While *Brady* requires the Government to disclose material favorable to the accused, "the government typically is the sole judge of what evidence in its possession is subject to disclosure." *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). *Brady* requests must be specific, not vague. Where, as here, the defendant fails to demonstrate that Government materials contain material evidence, the Court need not order discovery of the material. *See United States v. Driscoll*, 970 F.2d 1472, 1482 (6th Cir. 1992).

*C. Rule 16*

Gray argues that Rule 16 of the Federal Rules of Criminal Procedure requires the Government to make the sealed wiretaps available. Rule 16(a)(1)(B) states, in part:[2]

> Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying or photographing, all of the following:
>
> (1) any relevant written or recorded statement by the defendant if:
>
> > ! the statement is within the government's possession, custody, or control; and
> >
> > ! the attorney for the government knows – or through due diligence could know – that the statement exists.

Gray cites *Lanier v. Bryant*, 332 F.3d 999 (6th Cir. 2003), for the proposition that Title III does not prevent the Government from providing the tapes as Rule 16 disclosures. In *Lanier*, the Sixth Circuit affirmed summary judgment against a federal prisoner in his lawsuit against various government officials

---

[2] The other provisions of Rule 16(a)(1)(B), governing a defendant's statements under interrogation or to a grand jury, do not apply here.

Case No. 1:04CR580
Gwin, J.

under 42 U.S.C. § 1983 and Title III. The prisoner alleged that the officials illegally intercepted telephone communications between the prisoner and other individuals, and used the intercepts to investigate him. The prisoner argued that the disclosure of the wiretaps in response to his Rule 16 request violated section 2511. The Sixth Circuit held "any disclosure made pursuant to Rule 16 could not constitute an illegal disclosure " under Title III. *Id.* at 1005. In reaching this decision, the Sixth Circuit relied on the fact that the prisoner requested the production of the wiretaps.

*Lanier* is distinguishable from the present case because it involved an action by a federal prisoner for violations of Title III, and not a criminal prosecution. Additionally, in *Lanier*, the Government used the illegal intercepts in its investigation of the prisoner, and prosecutors apparently reviewed and knew the contents of the recordings. Here, the Government took extensive measures to maintain the confidentiality of the illegal recordings and has not used the recordings in conducting its investigation.

*Lanier*'s holding also runs contrary to the Sixth Circuit's earlier decision in *United States v. Wuliger*, 981 F.2d 1497 (6th Cir. 1992). *Lanier* implies that a defendant's consent to disclosure of illegal wiretaps renders such disclosure legal under Title III. In *Wuliger*, the Sixth Circuit reversed a defendant's conviction for using illegal wiretaps in violation of 18 U.S.C. § 2511(1)(d) where the district court did not properly instruct the jury on the issue of intent. The defendant also argued that it is not a crime under Title III "for one to use or disclose information from an illegal intercept where one of the parties consents to the disclosure." *Id.* at 1508. The Sixth Circuit disagreed, finding that "[t]he statute does not expressly provide a 'consent to use' exception to 18 U.S.C. § 2511(d)." *Id.*

Under *Wuliger*, then, a disclosure of illegal intercepts is illegal even where the victim of the intercept

-6-

Case No. 1:04CR580
Gwin, J.

consents to the disclosure. *Lanier* presumably would permit disclosure where a criminal defendant consents to disclosure under Rule 16. Because one Sixth Circuit panel cannot overrule an earlier panel, this Court follows *Wuliger*. *See Ahearn ex rel. NLRB v. Jackson Hosp. Corp.*, 351 F.3d 226, 235 (6th Cir. 2003). Gray's consent to disclosure under Rule 16 would not make the disclosure legal under Title III.

Regardless of the legality of a Rule 16 disclosure, Rule 16 does not entitle Gray to discovery of the sealed wiretaps in this case. Assuming that the sealed recorded statements are in the Government's possession and control, Gray does not demonstrate the existence of any relevant written or recorded statement. Gray does not point to any specific communications from the unlawful 60 day surveillance period at all.

Nor does Defendant Gray demonstrate that the Government knows or could know that any relevant statements exist. The Government denies any such knowledge. Because Title III prohibits the Government from using the unlawful intercepts for any purpose, the Government cannot know through due diligence whether any relevant statements by Gray exists. 18 U.S.C. § 2511(1)(d). Rule 16 thus does not entitle Gray to discovery.

*D. Judicial Exceptions To Title III*

Gray argues that judicially-created exceptions to Title III permit discovery of the disputed wiretaps. Specifically, he argues for application of the impeachment, clean hands, defense, and adjudication exceptions. The Court disagrees.

*1. Impeachment Exception*

-7-

Case No. 1:04CR580
Gwin, J.

"[W]hether or not an impeachment exception [to Title III] exists at all is an open question in this Circuit." *Wuliger*, 981 F.2d at 1506. Gray cites *Nix v. O'Malley*, No. 97-4086/97-4165, 1998 U.S. App. LEXIS 37797, at *25 (6th Cir. Nov. 16, 1998), for the proposition that the Sixth Circuit permits use of unlawful wiretaps for impeachment of Government witnesses. [Doc. 204 at 4]. Gray failed to quote the entire passage, which reads: "despite the language of Title III, we have permitted the use of illegally obtained wiretap evidence for impeachment, *but we have limited this to use by the government in criminal cases*." *Id.* (emphasis added).

The impeachment exception does not entitle the defendant to the requested discovery.

*2. Clean Hands Exception*

Defendant Gray invites the Court to apply the clean hands doctrine announced in *United States v. Murdock* 63 F.3d 1391 (6th Cir. 1995). The Court declines the invitation.

In *Murdock*, the Sixth Circuit ruled that, where the Government did not commit the unlawful interceptions, the Government could use the intercepts as evidence at trial despite the prohibitions of Title III. The defendant's wife made illegal recordings of conversations implicating the defendant in a bribery scheme. The wife mailed the recordings to another individual, who in turn sent the recordings to a newspaper. The Government read of the recordings in the newspaper, and obtained them through subpoena. The district court admitted the tapes under the clean hands exception, and the Sixth Circuit affirmed. The Sixth Circuit emphasized that the clean hands exception to 18 U.S.C. § 2515 allowed the Government to use an illegal recording "that literally falls into its hands." *Murdock*, 63 F.3d at 1403. The privacy concerns of Title III were not a roadblock to using the recordings because the newspaper already

Case No. 1:04CR580
Gwin, J.

published the details of the bribery scheme.

Gray hopes to take *Murdock* one step further. Gray agrees that the clean hands doctrine does not permit the Government to use the recordings because the Government obtained them illegally. However, the defendant says that if the Government gave him the recordings, the clean hands doctrine would enable him to use them at trial. Neither the parties nor the Court can identify any case extending the clean hands exception in this way. Indeed, a more recent Sixth Circuit decision (upon which Gray relies) characterizes *Murdock*'s holding as "recognizing a 'clean hands' exception that permits *the government* to use the contents of illegal interceptions if it played no role in the interception . . . ." *Nix*, 1998 U.S. App. LEXIS 37797, at *25 (emphasis added).

The clean hands exception does not entitle the defendants to discovery.

*3. The Defense And Adjudication Exceptions*

Gray argues that two more exceptions apply. First, Gray discusses the so-called defense exception announced in *Nix*. There, the Sixth Circuit limited the defense exception to circumstances not present here:

> We hold that, at least here, where a plaintiff filed a complaint alleging violations of wiretap laws, and were the district court denied plaintiff's motion for a protective order foreclosing use of the tapes in the defense, the defendant may disclose to his attorneys the contents of intercepted communications, and the defendant and attorney may use the contents to prepare a defense to the wiretap charges.

*Id.* at *27. Here, the Government does not charge the defendants with violations of wiretap laws. This fact alone prevents Gray from relying on the defense exception. *See Smoot v. United Transp. Union*, 246 F.3d 633, 646 (6th Cir. 2001) (holding that the *Nix* defense exception did not apply where party "was not defending against charges brought under [Title III]"). Additionally, the defendants are already free to

Case No. 1:04CR580
Gwin, J.

disclose the contents of any of their communications to their attorneys. The defense exception simply does not require the Government to disclose the sealed intercepts.

The adjudication exception does not benefit Gray either. In *Nix*, the Sixth Circuit described the adjudication exception as permitting "disclosure of intercepted material to a court for admissibility determination and to a court or jury for a resolution of illegality." *Nix*, 1998 U.S. App. LEXIS 37797, at *29. In this case, it is not necessary to review the intercepted materials to determine admissibility or illegality. As already discussed, under Title III, the intercepts are not admissible in court. They are likely also not admissible under the Federal Rules of Evidence. Nor is the illegality of the interception an issue – the Government admits to the illegality of the intercepts. Finally, like the defense exception, the adjudication exception only applies where the Government charges the defendants with violating Title III. *Smoot*, 246 F.3d at 646.

*E. Disclosure Under 18 U.S.C. § 2518(8)(d)*

Title III, section 2518(8)(d) requires the Government to provide an inventory of unlawful interceptions to interceptees within 90 days of the interception. Additionally,

> The judge, upon the filing of a motion, may in his discretion make available to such person or his counsel for inspection such portions of the intercepted communications, applications and orders as the judge determines to be in the interest of justice.

Gray argues that this section allows the Court to disclose the intercepted communications as a matter of discretion. There is some support for his position. *See Stoddard v. United States*, 710 F.2d 21, 22-23 (2d Cir. 1983) ("a district court may, as a matter of discretion order disclosure of 'intercepted communications, applications, and orders as the judge determines to be in the interest of justice'") (quoting

-10-

Case No. 1:04CR580
Gwin, J.

18 U.S.C. § 2518(8)(d)).

This Court previously granted the defendants access to certain wiretap applications and orders in this case, over the Government's objection. In light of (1) the privacy concerns and legal prohibitions of Title III, (2) the dubious admissibility of the communications, (3) the risk of taint to the Government's case, and (4) the fact that the Government cannot examine or use the illegally intercepted communications against the defendants, the Court finds that keeping the intercepts sealed best serves the interests of justice.

*F. The Jencks Act*

Gray argues for disclosure under the Jencks Act, 18 U.S.C. § 3500. The Jencks Act provides:

> (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena [sic], discovery, or inspection until said witness has testified on direct examination in the trial of the case.
>
> (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. § 3500(a), (b). The purpose of the Jencks Act is to enable the defense to "conduct its cross examination in light of all facts known to the prosecutor . . . ." *United States v. Head*, 586 F.2d 508, 512 (5th Cir. 1978). The Jencks Act accomplishes this by making "any existing prior statements made by a government witness equally available to the defense and the prosecution." *United States v. Bernard*, 625 F.2d 854, 859 (9th Cir. 1980).

-11-

Case No. 1:04CR580
Gwin, J.

The Jencks Act does not entitle the defendants to discovery of any statements by Government witnesses until after the witnesses testify. The "clear and consistent rule" is that "the government may not be compelled to disclose Jencks Act material before trial." *United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988). At trial, the defendants may move for an order requiring the Government to produce the witnesses' statements.

The Government assures the Court that it "is well aware of its continuing obligations" under the Jencks Act, and that it will disclose the necessary information at the appropriate time. [Doc. 268]. The Court declines to order a pre-emptive Jencks Act disclosure.

Although the parties do not substantively address the Jencks Act disclosure of the unlawful intercepts at trial, the Court anticipates disagreement as to whether the Act trumps the Title III prohibitions. This appears to be a question of first impression. According to the Sixth Circuit:

> [T]he [Jencks] Act was designed to prevent defendants from engaging in "blind fishing expeditions" through the government's files, but at the same time, to assure defendants of their Sixth Amendment right to confront their accusers by compelling the government to produce statements useful for impeachment of government witnesses.

*Presser*, 844 F.2d at 1283 (citation omitted). In this case, disclosure of the unlawful intercepts would not serve the purpose of the Jencks Act. Title III, section 2515 prohibits the parties from using the unlawful intercepts at trial. Disclosing the unlawful wiretaps would thus not "produce statements useful for impeachment of government witnesses." *Id.* Because the prosecution in this case has not reviewed the intercepts, keeping the intercepts sealed would not prevent the defense from "conduct[ing] its cross examination in light of all facts known to the prosecutor . . . . " *Head*, 586 F.2d at 512.

Case No. 1:04CR580
Gwin, J.

As previously discussed, the impeachment exception to Title III does not permit the defendants to use the unlawful intercepts for impeachment purposes at trial. *Nix*, 1998 U.S. App. LEXIS 37797, at *25-26. Additionally, the fact that the defendants may consent to the use of the unlawful intercepts at trial does not overcome the Title III prohibitions. *See Wuliger*, 981 F.2d at 1508 (holding that Title III does not provide a "consent to use" exception to the prohibition on using unlawful intercepts).

In light of the clear prohibitions of Title III and the intent behind the Jencks Act, the Government is not required to disclose the unlawful intercepts at trial.

### III. Conclusion

For the reasons stated above, the Court **DENIES** the Motion to Inspect of Defendant Nathaniel Gray. The denial is without prejudice to the defendants' ability to seek disclosure of the unlawful wiretaps to litigate the issue of whether they tainted subsequent stages of the Government's investigation. The Court will address any such motion after trial, and only in the event of a guilty verdict.

IT IS SO ORDERED.

Dated: May 9, 2005                    s/    *James S. Gwin*
                                      JAMES S. GWIN
                                      UNITED STATES DISTRICT JUDGE