UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------
                                                    :
UNITED STATES OF AMERICA,            :            CASE NO. 1:04cr580
                                                    :
                    Plaintiff,                      :
                                                    :
vs.                                                 :            OPINION AND ORDER
                                                    :            [Resolving Doc. Nos. 243, 327, 472, 509,
NATHANIEL GRAY, et al.,                  :            510, 512]
                                                    :
                    Defendants.                   :
                                                    :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    Defendant Nathaniel Gray makes the following motions: (1) Motion for Acquittal and/or

New Trial [Doc. 509], and (2) Motion to Arrest Judgment [Doc. 510].  Defendant Gilbert Jackson

also filed a Motion for Acquittal and/or New Trial.  [Doc. 512].  The Government opposes all

defense motions.  [Doc. 534].  For the reasons set forth below, the Court DENIES Gray's motion

for acquittal and/or new trial, Gray's motion to arrest judgment, and Jackson's motion for acquittal

and/or new trial.

I.  Background

    On August 17, 2005, a jury found Defendant Nathaniel Gray guilty of: (1) RICO conspiracy,

in violation of 18 U.S.C. § 1962(d) (count 1); (2) Hobbs Act conspiracy, in violation of 18 U.S.C.

§ 1951(a) (counts 2, 26, 41); (3) violation of the Hobbs Act, 18 U.S.C. §§ 1951, 2 (counts 3-9, 27-

31); and (4) honest services mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343 (counts 10-

Case No. 1:04cr580
Gwin, J.

15, 20, 22, 32-40, 42-44).[1] With the indictment, the Government generally alleged that Gray participated in public corruption schemes in the cities of Cleveland, Ohio, East Cleveland, Ohio, Houston, Texas, and New Orleans, Louisiana.

The same jury also found Defendant Gilbert Jackson guilty of RICO conspiracy (count 1); Hobbs Act conspiracy (counts 26, 41); violation of the Hobbs Act (count 28); and honest services mail and wire fraud (counts 37, 42-44).[2]

In his motion for acquittal and/or new trial, Gray argues: (1) the Court should have suppressed Title III phone intercepts, closed circuit television recordings, and search warrants; (2) the Court should have addressed the issue of taint before trial; (3) the Court should have granted access to self-suppressed materials; (4) the Court improperly denied a motion to dismiss for prosecutorial misconduct; (5) the Court improperly denied Gray's motion to sever his trial from that of Defendant Joseph Jones; (6) evidence used against Jones prejudiced Gray's case; (7) the Court should have declared a mistrial after Jones pled guilty; (8) the Court's show cause order regarding leaked affidavits created a conflict of interest necessitating a continuance of the trial; (9) leaked affidavits necessitated a change in venue or a continuance; (10) the Court erred in not permitting Gray's counsel to refer to certain aspects of witnesses' testimony during closing statements; (11) the Court should have ordered a new trial when jurors took Government-prepared timelines to the jury room; (12) the jury had insufficient evidence to convict Gray of certain offenses; (13) certain aspects of the jury instructions necessitate a new trial; (14) cumulative errors require a judgment of acquittal.

---

[1]On July 5, 2005, jurors in Gray's first trial found him not guilty of counts 16-19 (honest services mail & wire fraud), and the Court dismissed counts 23 (Hobbs Act conspiracy), 24 (Hobbs Act violation), and 25 (honest services mail and wire fraud). At his second trial, the Court dismissed Count 21 (honest services mail and wire fraud) as to Gray.

[2]The jury also acquitted Jackson of counts 32-36 and 38-40 (honest services mail and wire fraud).

Case No. 1:04cr580
Gwin, J.

In his motion to arrest judgment, Gray argues that the Court must arrest judgment on the Hobbs Act, honest services fraud, and RICO conspiracy charges because indictment does not charge an offense under those offenses.

For his part, Jackson makes the following arguments in support of a new trial: (1) the Government used a peremptory challenge to strike an African-American person from the jury; (2) the presence of the timelines in the jury room necessitated a new trial; (3) the Court improperly denied the defendants' motion to suppress the Title III wiretaps and overruled the defendants' objections to their use; (4) interim jury instructions confused the jury; and (5) the cumulative effect of trial irregularities requires a new trial.

## II. Legal Standard

### A.  *Fed. R. Crim. P. 29*

A court should deny a motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure when "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Mackey*, 265 F.3d 457, 460 (6th Cir. 2001).  In deciding a Rule 29 motion, "the court assumes the truth of the evidence offered by the prosecution." *Id.*  The Court draws all inferences from the evidence in favor of the prosecution. *United States v. Sherlin*, 67 F.3d 1208, 1214 (6th Cir. 1995).  The Court does not weigh the credibility of the Government's witnesses in reaching its decision. *United States v. Abdullah*, 162 F.3d 897, 903 (6th Cir. 1998).

To survive a Rule 29 motion, the Government need not exclude every hypothesis except that of guilt. *United States v. Adamo*, 742 F.2d 927, 932 (6th Cir. 1984).  The Sixth Circuit has noted that even "the uncorroborated testimony of a single accomplice may support a conviction under

Case No. 1:04cr580
Gwin, J.

federal law." *United States v. Gallo*, 763 F.2d 1504, 1518 (6th Cir. 1995).

### B.  Fed. R. Crim. P. 33

Rule 33 of the Federal Rules of Criminal Procedure provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  In deciding a Rule 33 motion for a new trial, the Court "may act in the role as a 'thirteenth juror' in assessing the credibility of the witnesses and the weight of the evidence to insure that there is no miscarriage of justice . . . ." *United States v. Young*, No. 03-4228, 2005 U.S. App. LEXIS 19542, at *9-10 (6th Cir. Sept. 8, 2005).  Whether to grant a motion for a new trial is subject to the Court's sound discretion.  *Id.*

### C.  RICO Conspiracy

To convict a defendant of RICO conspiracy, the Government need show that: (1) the conspiracy existed; (2) the defendant deliberately joined the conspiracy with knowledge of its purpose; (3) the enterprise affected interstate commerce; (4) the defendant's participation in the enterprise was through a pattern of racketeering activity; (5) the pattern of racketeering involved two or more predicate offenses.  *United States v. Hughes*, 895 F.2d 1135, 1141 (6th Cir. 1990).

### D.  Hobbs Act Violation And Hobbs Act Conspiracy

The Hobbs Act, 18 U.S.C. § 1951(a), makes it a crime to provide a public official with things of value in return for official acts under color of official right.  It is also a crime for two or more persons to conspire to violate the Hobbs Act, even if the conspirators never achieve their goal. Further, "extortion 'under color of official right' and bribery are really different sides of the same coin.  Extortion 'under color of official right' equals the knowing receipt of bribes." *United States v. Allen*, 10 F.3d 405, 411 (7th Cir. 1993).  *See Evans v. United States*, 504 U.S. 255, 267 (1992)

-4-

Case No. 1:04cr580
Gwin, J.

("We hold today that the Government need only show that a public official has obtained a payment to which he was not entitled, knowing that it was made in return for official acts.").

An agreement between two persons is a prerequisite to obtaining a conspiracy conviction. *United States v. Pennell*, 737 F.2d 521, 537 (6th Cir. 1984). "The basic rationale of the law of conspiracy is that a conspiracy may be an evil in itself, independently of any other evil it seeks to accomplish." *Iannelli v. United States*, 420 U.S. 770, 777 (1975). The Government can charge a defendant with both Hobbs Act conspiracy and a substantive Hobbs Act violation. *United States v. Frazier*, 880 F.2d 878, 884 (6th Cir. 1984).

*E. Honest Services Mail And Wire Fraud*

To convict a defendant of honest services mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343, the Government need prove that: (1) the defendant knowingly participated in a scheme to defraud the public of the honest services of public officials, (2) the defendant did so with the intent to defraud, and (3) the defendant mailed or wired something or caused someone to do so to implement the scheme. *United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 478 (6th Cir. 1999); 18 U.S.C. §§ 1341, 1346.

III. Analysis

*A. Suppression Of Title III Intercepts, Closed Circuit Recordings, And Search Warrants*

Gray filed a sealed motion to suppress all Title III intercepts on April 22, 2005. [Doc. 227]. Jackson joined in Gray's motion. Gray also filed a motion to suppress closed circuit television recordings [Doc. 242] and search warrants. [Doc. 243]. The Court denied the motions to suppress. [Docs. 306, 317].

Gray and Jackson offer nothing that is new on this issue in their post-trial motions. For the

-5-

Case No. 1:04cr580
Gwin, J.

most part, they restate Gray's previous motions to suppress.   The Court ruled on those arguments

in denying the previous motions.  The Court incorporates those rulings herein by reference.  [Docs.

306, 317, 424].

Gray also restates an argument he made during his second trial, that the Court overruled.

Gray argued that newly discovered evidence indicated that public information may have

contradicted information contained the original Title III affidavit.  [Tr. at 1211-1216].  He made the

same argument in a motion to renew his motion to suppress the Title III intercepts.  [Doc. 472].

First, this argument is untimely. Assuming the contradictory information was publicly available, as

Gray says, the Court will not excuse his failure to bring it to the Court's attention in time for the

hearing on his motion to suppress on April 28, 2005.  Additionally, Gray need demonstrate by a

preponderance of the evidence that the affiant knew the information in the affidavit was false, and

if so, that the affidavit would be insufficient if the false  information were excised.  *See Franks v.*

*Delaware*, 438 U.S. 154, 155-56 (1978); *United States v. Zimmer*, 14 F.3d 288-89 (6th Cir. 1994).

Gray fails to make such a showing.

The Court reaffirms that the defendants were not entitled to suppression of the Title III

intercepts,.  The Court also finds that the closed circuit television interceptions and the search

warrants were not admissible and not fruit of the poisonous tree.  Further, the Court denies Gray's

Motion to Renew Motion to Suppress Title III Intercepts.  [Doc. 472].

Incorporating the Court's previous rulings, the Court also finds that the Government's search

warrant for the June 11, 2003 search of Gray's business and residence was not based on any illegal

wiretap or closed circuit recording.  As a result Gray was not entitled to suppression of that search

warrant.  [Doc. 243].

-6-

Case No. 1:04cr580
Gwin, J.

*B. Taint*

Gray argues that the Court should have addressed the issue of taint before his second trial. Specifically, Gray refers to possible taint arising from unlawful wire intercepts during from February through May 2002. The Government voluntarily suppressed the illegal wiretaps. The illegal wiretaps record conversations between Gray and others, possibly including co-defendants in this matter.

To paraphrase the Ninth Circuit, Gray "has cited no authority supporting his claim of entitlement to a 'taint hearing', and [the Court is] aware of none." *United States v. Young*, No. 04-30035, 2005 U.S. App. LEXIS 10929, at *2 (9th Cir. June 9, 2005). Regardless, courts routinely conduct post-trial taint hearings regarding illegal wiretaps. *See, e.g., In re Prevot*, 59 F.3d 556, 564 n.8 (6th Cir. 1995); *United States v. Bissell*, 634 F.2d 1228, 1229 (9th Cir. 1980). It was not error for the Court to defer a taint hearing until after trial.

*C. Access To Self-Suppressed Materials*

Gray reiterates his request to access the self-suppressed wiretaps. Gray previously filed a motion seeking access to those materials, which the Court denied. [Docs. 204, 277]. The Court's earlier opinion on this subject applies to Gray's renewed request, and the Court incorporates that opinion herein by reference.

Gray suggests that the illegal wiretaps may have been useful in impeaching Emmanuel Onunwor, who testified that he and Gray had a conversation that might have been included within the self-suppressed intercepts. [Tr. at 530-535, 621]. The Court refers Gray to the Sixth Circuit's opinion in *Nix v. O'Malley*, No. 97-4086, 97-4165, 1998 U.S. App. LEXIS 37797, at *25 (6th Cir. Nov. 16, 1998). There, the Sixth Circuit found that "despite the language of Title III, we have

-7-

Case No. 1:04cr580
Gwin, J.

permitted the use of illegally obtained wiretaps for impeachment, *but we have limited this to use by the government in criminal cases.*"  *Id.* (emphasis added).  Because Title III prohibits Gray's use of the illegal wiretaps at trial, their disclosure would not further the interests of the Jencks Act.  The Jencks Act only compels the Government to "produce statements useful for impeachment of government witnesses."  *United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988).  Further, although Gray lacked access to the self-suppressed intercepts, his counsel thoroughly cross-examined Onunwor [Tr. at 576-657], and went to great lengths to argue to the jury that Onunwor's testimony was "replete with contradictions."  [Doc. 509 at 11].

The Court also finds that the testimony of Government witnesses Agent Peter Smith and Garland Hardeman does not support Gray's access to the self-suppressed materials.  Gray says that the cross-examinations of Smith and Hardeman raised an issue that the Government's case may have been tainted by the self-suppressed intercepts.  The Court questioned Smith on this issue outside of the jury's presence.  Smith stated that he never had access to the self-suppressed intercepts, and that he was assigned to the case to replace agents who may have been exposed to any illegally-obtained intercepts.  [Tr. at 1022].

Under these circumstances, the Court finds that Gray fails to demonstrate that the denial of access to the self-suppressed materials warrants acquittal or a new trials.

D. *Prosecutorial Misconduct*

Gray also agues that various aspects of the Government's conduct before and during trial constitute prosecutorial misconduct necessitating acquittal.  Gray points to the following as prosecutorial misconduct: (1) comments during the Government's closing rebuttal regarding Gray's decision not to offer any wiretaps as evidence; (2) the Government's reference to the jurors'

-8-

Case No. 1:04cr580
Gwin, J.

neighbors during closing rebuttal; and (3) various conduct relating to the Government's surveillance of Gray. The Government disagrees. The Court finds that the Government's conduct does not rise to the level of prosecutorial misconduct. This discussion also resolves Gray's pending motion to dismiss for prosecutorial conduct. [Doc. 327]

It is well settled that "[p]rosecutorial misconduct cannot support a grant of a new trial unless it is 'so pronounced and persistent that it permeate[d] the entire atmosphere of the trial.'" *United States v. Bond*, 22 F.3d 662, 667-68 (6th Cir. 1994) (citation omitted). In assessing a defendant's objections to a prosecutor's statements during closing arguments, the Sixth Circuit applies a three-part test. "First, the court should determine if the prosecutor's statements were improper. Then, if the statements were improper, the court must determine if the impropriety was flagrant." *United States v. Monus*, 128 F.3d 376, 394 (6th Cir. 1997). In assessing flagrancy, the Court considers "(1) whether the remarks tended to mislead the jury or prejudice the accused; (2) whether they were isolated or extensive; (3) whether the were deliberately or accidently placed before the jury; and (4) the strength of the evidence against the accused." *Id.* If the comments were flagrant, the Court only grants relief where the "proof against the defendant was not overwhelming, opposing counsel objected to the conduct, and the district court failed to give a curative instruction." *Id.* The Court assesses the Government's challenged conduct "within the context of the trial as a whole." *United States v. Barnett*, 398 F.3d 516, 522-23 (6th Cir. 2005).

### 1. Comments Regarding Defense's Use Of Interceptions

During his closing argument, Gray referred to the "50,000" wiretap interceptions in this case, and suggested to the jury that the Government's failure to introduce the vast majority of those intercepts showed that the Government was keeping exculpatory evidence from the jury or that there

-9-

Case No. 1:04cr580
Gwin, J.

was not incriminating evidence in those intercepts.  [Tr. at 1842-1848].  Gray further suggested that

the Government did not provide the defense with full access to its evidence.  [Tr. at 1845].  In its

rebuttal argument to Gray's closing statement, the Government confirmed that Gray had no duty to

produce any evidence.  [Tr. at 1924].  The Government also referred to the intercept evidence the

defense presented, stating that if there were intercepts that placed Gray's potentially incriminating

comments in context, Gray would not have chosen to play a tape that only "slime[d]" prosecution

witness Oliver Spellman.  [Tr. at 1923].

Gray objected to the Government's comments.  [Tr. at 1924].  The Court instructed the jury

that the Government supplied the defense with access to all the tapes in the case, and that the Rules

of Evidence governed the admissibility of evidence and the jury should not speculate on the

application of those rules.  [Tr. at 1925].

First, the Court notes that Gray's suggested negative inference regarding the 50,000 unplayed

interceptions was improper as Gray did not seek advance permission to make that argument.  *See*

*United States v. Blakemore*, 489 F.2d 193, 196 (6th Cir. 1973) ("when counsel for either side intends

to argue to the jury for an adverse inference to be derived from the absence of witnesses, an advance

ruling from the trial court should be sought and obtained"); *United States v. Beeler*, 587 F.2d 340,

343 (6th Cir. 1978) (same).  Gray also had his own copies of the unplayed interceptions.  Gray could

not properly have requested such a negative inference, because the intercepts were not "peculiarly

within the control" of the Government.  *Blakemore*, 489 F.2d at 195-96.  Additionally, Gray's

argument was misleading because Gray's own successful efforts during discovery were responsible

for many of the intercepts not being admitted into evidence.

Under the circumstances, the Government's rebuttal was not improper.  The Sixth Circuit

-10-

Case No. 1:04cr580
Gwin, J.

recently addressed this issue in *United States v. Newton*, 389 F.3d 631, 638 (6th Cir. 2004), *cert. granted and judgment vacated on other grounds*, 125 S. Ct. 280 (2005).  In *Newton*, the defense made a similar argument regarding unplayed audiotapes, and "the prosecutor argued that if [the defendant] wanted the tape played, he could have played it himself."  *Id.*  The defense argued that the prosecutor's statement constituted improper burden-shifting.  The trial court and the Sixth Circuit disagreed, finding that the prosecutor's statement was proper because it "was made to rebut defense insinuations that the government intentionally kept evidence away from the jury."  *Id.*  Other cases reach the same result under similar circumstances.  *See, e.g., United States v. Clark*, 982 F.2d 965, 968 (6th Cir. 1993) (finding that Government properly responded to defense argument that Government did not call witness by stating that defense could also have called witness).

The Government's comments were not extensive or prejudicial enough to be considered flagrant.  Further, in light of the overwhelming evidence against Gray and the Court's curative instructions, the Government's comments do not necessitate a new trial or acquittal.

    *2.  Comments Regarding Jurors' Neighbors*

Gray asserts that the Government improperly personalized the verdict to the jury by saying that "they would be embarrassed in front of their friends and family if they returned a verdict of not guilty." [Doc. 509 at 14].  The Government denies that its statements improperly personalized the verdict.  [Doc. 534 at 16].  The Court agrees with the Government.

    The Government "is ordinarily entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel."  *Angel v. Overberg*, 682 F.2d 605, 607-8 (6th Cir. 1982).  The Sixth Circuit permits attorneys to appeal to jurors' common sense in closing arguments. *See United States v. Lattner*, 385 F.3d 947, 960 (6th Cir. 2004) (finding no violation of defendant's

Case No. 1:04cr580
Gwin, J.

right to fair trial where prosecutor appealed to jurors' "common sense"); *United States v. Smith*, 89

Fed. Appx. 494, 497 (6th Cir. 2004) (no misconduct where prosecutor "simply asked jurors to use

common sense").

Gray challenges the Government's reference during rebuttal to the jurors' neighbors and how

they might view the evidence against the defendants. [Tr. at 1933-1935]. The Government's

comments were not improper. During the defense's closing argument, Gray argued that the "whole

picture" in the case necessitated acquittal. [Tr. at 1849]. The Government's appeal to the jurors'

common sense were simply a response to the defense's characterization of the "whole picture."

Even if the Government's comments had been improper, they were not flagrant. *Monus*, 128

F.3d 376, 394 (6th Cir. 1997). The remarks did not mislead the jury and they were isolated. The

Court also sustained the defense's objection to certain of the comments. [Tr. at 1935]. Even if the

comments could be considered flagrant, the extent of the evidence against Gray was overwhelming.

*Id.*

### 3. The Government's Pretrial Conduct

Gray argues that errors during the Government's investigation of Gray constitute

prosecutorial misconduct. Gray focuses his attention on the Government's electronic surveillance

of Gray. [Doc. 509 at 14-16]. Gray essentially repackages the arguments from his various motions

to suppress as a claim of prosecutorial misconduct. [Doc. 227, 242, 243, 472]. The Government

responds that the Government's actions do not amount to prosecutorial misconduct necessitating

acquittal or a new trial. The Court agrees with the Government.

Again, prosecutorial misconduct "cannot support a grant of a new trial unless it is 'so

pronounced and persistent that it permeate[d] the entire atmosphere of the trial.'" *Bond*, 22 F.3d

Case No. 1:04cr580
Gwin, J.

662, 667-68 (6th Cir. 1994) (citation omitted).  The Court has already addressed the background of the Government's actions during and leading up to its surveillance of Gray.  *See supra* Sec. III.A. The Government took extensive steps to remedy any errors surrounding the surveillance, including voluntarily suppressing all illegal wiretaps and bringing in new investigators and attorneys to man the case against Gray.  Further, there is no evidence that the Government committed the missteps with the intent of illegally monitoring Gray's communications.  The Government's response to its errors indicates precisely the opposite.  In addition, the Government's errors occurred approximately three years before Gray's first trial in this matter.

Nevertheless, Gray argues that the Government errors during approximately the first six months of 2002 require acquittal or a new trial.  Citing cases that do not mention prosecutorial misconduct, Gray says that the Government's conduct was "shocking to the universal sense of justice," thereby violating Gray's due process rights under the Fifth Amendment and requiring a new trial.  [Doc. 509 at 17] (citing *United States v. Russell*, 411 U.S. 423, 432 (1973); *United States v. Tobias*, 662 F.2d 381 (5th Cir. 1981)).  The Court disagrees.  Again, there is no evidence that the Government intended to monitor Gray in violation of Title III's technical requirements.  Nor is there any evidence that the Government benefitted from the illegal intercepts.  If anything, the Government's conduct weakened its case against Gray.

Accordingly, the Court finds that the Government's conduct leading up to trial did not constitute prosecutorial misconduct.  And even if the Government had committed prosecutorial misconduct, which the Court finds that it did not, the unintentional and temporally isolated nature of the misconduct does not support a grant of a new trial under *United States v. Bond*.

*E.  Severance From Defendant Joseph Jones*

-13-

Case No. 1:04cr580
Gwin, J.

Gray agues that the Court's denial of his motion to sever his trial from that of Defendant Joseph Jones requires a new trial. [Doc. 509 §§ VI, VII]. Gray filed his motion on August 5, 2005, and the Court denied the motion on August 8, 2005. [Docs. 445, 463]. The Government responds that Gray's severance claim is moot and legally deficient. The Government is correct.

First, Gray waived the severance issue because he did not renew his motion to sever at the close of evidence. In the Sixth Circuit's words: "[A] motion to sever counts or co-defendants is deemed waived if it is not renewed at the end of the evidence." *United States v. Hudson*, 53 F.3d 744, 747 (6th Cir. 1995). Gray's belated motion to sever is thus both procedurally and substantively deficient.

As the Court ruled in its previous Order denying Gray's motion to sever [Doc. 463], the indictment properly joined Gray and Jones as co-defendants under Rules 8(a) and 14(b) of the Federal Rules of Criminal Procedure. The Court incorporates that earlier decision herein by reference. Jones pled guilty just two days into the second trial, and before the Government even presented any evidence against Jones. [Tr. at 739]. After Jones pled guilty, the Government played two phone calls regarding Gray's $5,000 loan to Jones. During the Government's case, the Court instructed the jury that giving the loan was not a crime. [Tr. at 763-764]. In charging the jury on the RICO charge, the Court went even further: "you will not consider evidence as to the $5,000 loan that Defendant Gray made to Joseph Jones as alleged in Count 25 [of the indictment]." [Tr. at 1769].

In light of Jones' early plea, the dearth of evidence regarding Jones, and the Court's limiting instructions to the jury, Gray does not meet the "heavy burden of showing specific and compelling prejudice" from his joint trial with Jones. *United States v. Causey*, 834 F.2d 1277, 1287 (6th Cir.

-14-

Case No. 1:04cr580
Gwin, J.

1987). Further, the Court's limiting instructions averted any risk of prejudice against Gray. *See*

*Zafiro v. United States*, 506 U.S. 534, 540 (1993).

*F. Jones' Guilty Plea*

Gray argues that Jones' guilty plea two days into the trial necessitated a mistrial. [Doc. 509

at 21]. The Court disagrees. The power to order a mistrial "ought to be used with the greatest

caution, under urgent circumstances, and for very plain and obvious causes . . . . " *Arizona v.*

*Washington*, 434 U.S. 497, 506 (1978) (citation omitted). A codefendant's guilty plea during trial

does not necessarily require a mistrial. *See United States v. Walker*, 1 F.3d 423, 428 (6th Cir. 1993)

(affirming denial of motion for mistrial where codefendants pled guilty during trial). As in *Walker*,

the Court instructed the jury during the trial that Jones was no longer part of the case. [Tr. at 753-

754]. During the jury charge, the Court further instructed the jury "that whether any other person

or entity should be prosecuted or convicted of a crime is not a proper matter for you to consider," and

"[d]o not let the possible guilt of others influence your decision in any way." [Tr. at 1754, 1755].

Nor is there any indication that the media coverage of Jones' plea tainted the proceedings. The

Court repeatedly instructed the jurors not to follow any coverage of the case. The Court presumes

that the jurors were capable of following the Court's instructions and properly evaluating the

evidence against the remaining defendants. *See United States v. Warner*, 690 F.2d 545, 553 (6th Cir.

1982).

*G. Conflict of Interest*

According to Gray, the investigation into leaked wiretap affidavits necessitated a

continuation of the August 8, 2005 trial date. [Doc. 509 at 22]. The Government responds that Gray

fails to demonstrate proof an actual conflict. The Court agrees with the Government.

Case No. 1:04cr580
Gwin, J.

On July 22, 2005, the Court issued an order to all counsel in this matter to show cause why they should not be held in criminal contempt for violating the Court's protective order governing the wire affidavits and applications. [Doc. 402]. The show cause order gave notice to all counsel that they are "accused contemnors." The Court appointed Special Master John Czarnecki and Assistant U.S. Attorney Mark D'Alessandro from the Southern District of Ohio to investigate the disclosure of sealed documents. [Doc. 405; case no. 1:05-mc-70 Doc. 1].

Where a party complains of a conflict in interest, the Sixth Circuit requires that party to demonstrate that there was an actual conflict, and that the conflict adversely affected his attorney's performance. *See Thomas v. Foltz*, 818 F.2d 476, 480-81 (6th Cir. 1987) (resolving claim of ineffective assistance of counsel based on conflict of interest); *United States v. Taylor*, 985 F.2d 844, 846 (6th Cir. 1993) (same). Gray simply concludes that a conflict existed, without demonstrating any such conflict. Nor does Gray demonstrate how the proposed continuance of indeterminate length would have alleviated a conflict.

While U.S. Attorneys from the Northern District of Ohio prosecuted Gray in the underlying corruption trial, a U.S. Attorney from the Southern District of Ohio and an independent Special Master conduct the leak investigation. In *Taylor*, the Sixth Circuit affirmed a defendant's drug conviction where he asserted a conflict of interest between himself and his attorney. The Sixth Circuit found that where different legal authorities conducted concurrent investigations of a defendant and his counsel, the concurrent investigations did not support a finding that an actual conflict existed. *Taylor*, 985 F.2d at 846. The same reasoning applies to the concurrent proceedings involving Gray and the attorneys involved in his trial.

*H. Prejudice From Leaked Affidavits*

-16-

Case No. 1:04cr580
Gwin, J.

Gray argues that the leaking of sealed affidavits supporting wiretap applications and other sealed materials prejudiced him and necessitated a change of venue or continuance.  The Government responds that Gray does not demonstrate that he suffered any prejudice.  The Court agrees with the Government.

The Cleveland Plain Dealer and the weekly Cleveland Scene ran front page stories discussing the contents of the sealed materials in the weeks leading up to Gray's second trial.  Other Cleveland media outlets also discussed the leaked materials.  Although the media outlets discussed the leaked materials, Gray does not refer the Court to any particular information from the stories that prejudiced him.  As important, the Court conducted an extensive voir dire of the jury and no seated juror described any significant knowledge of the case and all indicated they could decide the case upon the evidence presented at trial.

"Exposure to publicity, alone, does not presumptively deprive the defendant of his right to a fair and impartial jury."  *United States v. Johnson*, 584 F.2d 148, 154 (6th Cir. 1978).  Only pervasive and inherently prejudicial media coverage impinges upon a defendant's trial rights. *Rideau v. Louisiana*, 373 U.S. 723 (1963).   "Through proper questioning the court can determine the extent of the venire person's exposure to the publicity and the effect it has had upon them." *Johnson*, 584 F.2d at 154.  At voir dire, the Court inquired into the potential jurors' familiarity with the case and the publicity surrounding it.  Where a juror expressed familiarity, the Court gave the parties the opportunity to move to dismiss that juror for cause or through peremptory challenge.  [Tr. at 109-130].

Under these circumstances, the Court finds that the leaked information necessitated neither a continuance nor a change of venue.

-17-

Case No. 1:04cr580
Gwin, J.

*I.  References To Testimony During Gray's Closing Statement*

Gray says the Court should have permitted him to discuss "how companies that Mr. Gray regularly deals with consider the expenses of taking prospective public employer clients out to dinner or to a sporting event . . . ." [Doc. 509 at 25].  The Government responds that discussing such "wining and dining" would have been inappropriate, and that the Court properly prevented Gray from doing so.  The Court agrees with the Government.

During closing arguments, Gray's counsel referred to the absence of other defendants from the indictment, and also to "wining and dining" of public officials as a matter of corporate routine. [Tr. at 1853, 1868].  The Government objected to these comments.  In response to the Government's objections and on its own initiative, the Court instructed Gray's counsel not to discuss such matters.

The improper comments by Gray's counsel flouted the Court's instructions to the jury on the absence of other parties and the law governing the Hobbs Act claims.  It was not error for the Court to direct Gray's counsel to avoid those topics.  To have done otherwise would have amounted to a free pass for shady trial tactics.

*J.  The Presence Of Government Timelines In The Jury Room*

Gray and Jackson argue that the presence of unadmitted Government timelines in the jury room after the jury began deliberations should have resulted in a mistrial.  Both defendants seek a new trial on this basis.  The Government responds that the timelines were admissible and that they did not cause the defendants any prejudice.  The Court denies the defendants' request for a new trial.

During trial, the Court permitted the jurors to refer to four Government timelines.  FBI Special Agent Massie prepared the timelines. On direct examination, Special Agent Massie explained that the four timelines (one each for Cleveland, East Cleveland, Houston, and New

Case No. 1:04cr580
Gwin, J.

Orleans) organized wiretap interceptions and documents in chronological order.  The entries

identified the specific exhibit number(s) and included only quotations from the exhibits themselves.

At the close of its case, the Government sought to admit the timelines as evidence.  The defendants

objected, and the Court sustained the objection.  The Court instructed the jury that a timeline

summary is "not evidence of the material it summarizes, and is only as valid and reliable as the

underlying material it summarizes."  [Tr. at 1802].

> Although the Court did not intend for the jurors to take the timelines with them during their

deliberations, apparently some of the jurors brought their timelines into the jury room.  Upon

learning of this, the Court's staff secured all available timelines.  The Court also instructed the jury:

> These timelines are not evidence in this case.  They're not intended
> to be evidence.  They weren't given to you as evidence.  Instead, they
> were given to you merely as an aid to help you follow the evidence
> as it came in during the trial.  I'm going to specifically again instruct
> you that they are not evidence in this case, and in reaching your
> conclusions on any of the counts of the indictment you're not to
> consider them as evidence in any way.

[Tr. at 1984].  After receiving this instruction, the jury returned to deliberations.

> 1. *The Court Could Properly Have Admitted The Timelines*

> Although the Court did not admit the timelines as evidence, it could have properly admitted

them.  Under Federal Rule of Evidence 1006:

> The contents of voluminous writings, recordings, or photographs
> which cannot conveniently be examined in court may be presented in
> the form of a chart, summary, or calculation.  The original, or
> duplicates, shall be made available for examination or copying or
> both by other parties at a reasonable time and place.  The court may
> order that they be produced in court.

As the Sixth Circuit found in *United States v. Bray*, 139 F.3d 1104, 1112 (6th Cir. 1998), a court

Case No. 1:04cr580
Gwin, J.

may admit secondary-evidence summaries under Rule 1006.  While a secondary-evidence summary summarizes voluminous evidence that cannot be conveniently examined in court, the summary itself is not considered independent evidence:  "These secondary-evidence summaries are admitted in evidence not in lieu of the evidence they summarize but in addition thereto . . . . " *Id.*  A court may admit a secondary evidence summary where it is "so accurate and reliable a summary illustration of testimonial or other evidence in the case as to reliability assist the fact finder in understanding the evidence, although not within the specific requirements of Rule 106." *Id.*  In admitting a secondary-evidence summary, a court must instruct the jury that "the summary is not independent evidence of its subject matter, and is only as valid and reliable as the underlying evidence it summarizes."  *Id.*

The defendants do not contend that the timelines are inaccurate.  Rather, they focus on the fact that the timelines serve to organize the Government's evidence.  Although Court opted not to admit the timelines into evidence, the Court could have admitted them as secondary-evidence summaries under the Sixth Circuit's *Bray* decision.

### *2. There Is No Reasonable Possibility That The Timelines Caused Any Prejudice*

The Court finds no basis for the defendants' contention that the timelines prejudiced them.  Both the Government and Jackson ask the Court to apply the Sixth Circuit's decision in *United States v. Cooper*, 868 F.2d 1505 (6th Cir. 1989).  There, the Sixth Circuit looked to four factors where the defense alleged that jurors' access to unadmitted materials caused prejudice:

> (1) [W]hen a defendant alleges that an unauthorized contact with a juror has tainted a trial, a hearing must be held [pursuant to *Remmer v. United States*, 347 U.S. 227 (1954)]; (2) no presumption of prejudice arises from such a contact; (3) the defendant bears the burden of proving actual juror bias; and (4) juror testimony at the "*Remmer* hearing" is not inherently suspect.

-20-

Case No. 1:04cr580
Gwin, J.

*Id.* at 1523.  A defendant must request a *Remmer* hearing on the prejudice issue, otherwise the Court need not conduct such a hearing.  *United States v. Walker*, 160 F.3d 1078, 1083-84 (6th Cir. 1998) (affirming conviction where defendant did not request *Remmer* hearing); *United States v. Reeves*, No. 99-1248, 2000 U.S. App. LEXIS 11771, at *5-6 (6th Cir. May 19, 2000) (same).

In this case, no party requested a *Remmer* hearing.  [Tr. at 1980-1984].  Instead, the defendants moved for a mistrial, which the Court denied.  [Tr. at 1980-1984].  Further, no presumption of prejudice arose from the timelines' presence in the jury room, and the defendants have not proven actual juror bias.  Under *Cooper*, then, the Court finds that the defendants are not entitled to a new trial on this issue.

For his part, Gray directs the Court to *United States v. Powell*, 765 F. Supp. 920 (S.D. Ohio 1991), a decision that does not cite the Sixth Circuit's *Cooper* opinion.  Gray characterizes *Powell* as requiring the Government to prove the prejudice did not result where jurors had access to unadmitted materials.  [Doc. 509 at 27].  Even so, *Powell* also found that where the challenged materials are simply cumulative of admitted evidence, prejudice does not result.  *Id.* at 924.  Given the cumulative nature of the timelines in this case, *Powell* does not require a new trial.

In denying a new trial based on the timelines, the Court's decision is further aided by the fact that (1) the jurors had access to the timelines during the trial itself, and (2) the Court instructed the jurors not to consider the timelines as evidence during deliberations.  Under these circumstances, the Court finds that the jurors unintended access to the timelines necessitates a new trial.

*K.  Sufficiency Of The Evidence/Motion To Arrest Judgment*

Gray argues that there was insufficient evidence to convict him on counts 10-12, 22, 27, 30, 33, and 35.  In his motion to arrest judgment [Doc. 510], Gray argues that there was insufficient

Case No. 1:04cr580
Gwin, J.

evidence of a quid pro quo for the Hobbs Act charges.  The Government disagrees on both counts.

The Court finds the Government's argument is correct.

A court should deny a motion for judgment of acquittal based on insufficient evidence when

"after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." *Mackey*, 265 F.3d

at 460.  In deciding a Rule 29 motion, "the court assumes the truth of the evidence offered by the

prosecution." *Id.*  The Court draws all inferences from the  evidence in favor of the prosecution.

*Sherlin*, 67 F.3d at 1214.  The Court does not weigh the credibility of the Government's witnesses

in reaching its decision.  *Abdullah*, 162 F.3d at 903.

To survive a Rule 29 motion, the Government need not exclude every hypothesis except that

of guilt.  *Adamo*, 742 F.2d at 932.  The Sixth Circuit has noted that even "the uncorroborated

testimony of a single accomplice may support a conviction under federal law." *Gallo*, 763 F.2d at

1518.

### 1.  Counts 10-12, 22: Honest Services Mail & Wire Fraud – East Cleveland

Counts  10-12  are  honest  services  mail  and  wire  fraud  charges  arising  out  of  Gray's

relationship with East Cleveland Mayor Emanuel Onunwor.  The three counts arise out of three

$1,000 checks sent from the Javitch, Block law firm to ETNA Associates.   Gray argues that the

Government failed to provide evidence that the mailings and wirings furthered a fraudulent scheme.

The Court disagrees.  Onunwor testified that he and Gray agreed that Gray would pay Onunwor in

return for securing Gray's consulting agreement with Javitch Block.  [Tr. at 517-523].  Onunwor

influenced Javitch Block to hire Gray to retain its tax collection contract with East Cleveland.  In

turn, Javitch Block began sending checks to Gray, and the firm continued to perform tax collection

-22-

Case No. 1:04cr580
Gwin, J.

services.  From this, a reasonable juror could find that Gray and Onunwor caused Javitch Block to mail the checks in furtherance of a scheme to defraud the public of Onunwor's honest services by having the law firm make payments to Gray, and that Gray, in turn, remitted a portion of the payment to Onunwor.

Similarly, there was sufficient evidence to convict Gray on count 22.  Count 22 arose out of an interstate phone call between Gray and Robert Pena.  The Government played the conversation at trial.  [Tr. 367-368].  During the conversation, Gray discussed his influence over Onunwor and requested a financial "arrangement" with Pena.  Pena hoped to develop real estate in East Cleveland. A reasonable juror could conclude that Gray made the calls in furtherance of a scheme to defraud the public of Onunwor's honest services.

2.  *Counts 27-31: Hobbs Act – Houston*

In his motion for acquittal and/or new trial, Gray challenges his convictions on counts 27 and 30 saying that there was insufficient evidence.  Gray makes a similar argument with respect to counts 27 to 31 in his separate motion to arrest judgment.  [Doc. 510].  For purposes of expedience, the Court addresses the arguments together.

Counts 27 to 31 are for substantive Hobbs Act violations in which Gray allegedly aided and abetted specific payments and benefits to public officials in exchange for official acts.  Count 27 relates to a Cleveland Browns football weekend and Ritz Hotel accommodations for Monique McGilbra in return for her assistance in securing and maintaining subcontracts from Reliant Energy for Honeywell.  Count 28 relates to a New Orleans Super Bowl weekend for McGilbra and her boyfriend Garland Hardeman.  Count 29 arises out of Gray and Jividen's purchase of a designer purse for McGilbra.  Count 30 relates to payments to Oliver Spellman in exchange for Spellman's

Case No. 1:04cr580
Gwin, J.

help with securing a Houston airport shuttle contract for one of Gray's businesses, while count 31

relates to a Las Vegas trip that Gray partially paid for Spellman.

Gray argues that the Government failed to present evidence that Gray provided any things

of value in return for official acts, and that Gray cannot face conspiracy and aiding and abetting

charges arising out of extortion claims.  The Court disagrees with Gray and finds that the

Government offered sufficient evidence to convict Gray of counts 27 to 31.  The Government

offered extensive evidence that Gray and others provided cash payments and various things of value

to McGilbra and Spellman in exchange for (1) McGilbra's assistance in securing work for

Honeywell as a subcontractor for Reliant and (2) Spellman's assistance in securing an airport shuttle

contract for Gray's business affiliates.

Counts 27 to 29 arise out of Gray's dealings with McGilbra.  McGilbra was Houston's

Building Services Director.  As to count 27, McGilbra testified that Gray invited her to a Cleveland

Browns football game in Cleveland in October 2001.  [Tr. at 1236-1237].  McGilbra further testified

that while in Cleveland, Gray and the other conspirators provided her with accommodations at the

Ritz Carlton Hotel, and that Gray assured her that all expenses had been taken care of.  [Tr. at 1239].

McGilbra charged a massage and flowers to her room account.  Gray paid for McGilbra and her

boyfriend Garland Hardeman to go out to dinner.  The conspirators also provided McGilbra with

bathrobes from the hotel.  While she attended the game, Jividen discussed Honeywell's capabilities

and interest in securing energy contracts through the City of Houston.  [Tr. at 1241-1243].  Even if

McGilbra did not know that the trip and various gifts were related to Honeywell at the beginning

of the weekend, she reached such an understanding before she checked out of the hotel (on

Honeywell's tab) and returned to Houston with the gifts.

-24-

Case No. 1:04cr580
Gwin, J.

For count 28, the Government played conversations between Jividen and Gray in which the two discussed McGilbra's expenses for the February 2002 New Orleans trip, and how McGilbra and Hardeman would be indebted to them as Honeywell representatives.  The jury also heard a conversation between Gray and Jackson in which Jackson agreed to host McGilbra on the trip, including taking her to lunch and dinner, as well as to a brunch with the New Orleans Mayor.  By this point in time, McGilbra was well aware that Gray and Jividen worked on Honeywell's behalf. McGilbra testified that during the time of the Super Bowl trip, she supervised the demand-side energy contract in Houston for Reliant Energy, a Honeywell subcontractor.  [Tr. at 1254-1260].  After the Super Bowl, the contract was in phase one.  McGilbra testified that Honeywell would not make money on the contract until the contract entered phase two.  [Tr. at 1254].  From this, the jury could reasonably have concluded that Gray used the Super Bowl trip to make to entice McGilbra to keep phase one moving, so as to allow Honeywell to begin phase two as soon as possible.

Count 29 arises out of the designer purse that Gray bought for McGilbra in November 2002. [Tr. at 1272].  McGilbra testified that  after Gray bought her the purse, he asked her about the status of phase one of Honeywell's Houston contract.  McGilbra also testified that during this time, Gray was concerned about Thacker, a company that competed with Honeywell for contracts in Houston. [Tr. at 1272].  Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to convict Gray of count 29.

As to counts 30 and 31, Oliver Spellman testified that Gray provided him with $2000 and a Las Vegas trip during the same period Gray sought a rental car shuttle contract for one of Gray's businesses at a Houston airport.  At the time, Spellman was Chief of Staff for Houston's Mayor. Spellman testified that Gray paid for the $600 Las Vegas weekend and left $2000 in an envelope in

Case No. 1:04cr580
Gwin, J.

Spellman's car, and that in return Spellman used his office to help Gray secure city contracts. [Tr. 1402-06]. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to convict Gray on counts 30 and 31.

From this evidence, a rational juror could convict Gray of violating the Hobbs Act in relation to Honeywell's contracts in Houston and the Houston airport parking shuttle contract.

Contrary to Gray's assertions in his motion to arrest judgment, although the Hobbs Act includes a quid pro quo requirement, "[t]he official and the payor need not state the quid pro quo in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods." *Evans v. United States*, 504 U.S. 255, 274 (1992) (Kennedy, J., concurring), *cited with approval in United States v. Carmichael*, 232 F.3d 510, 519 (6th Cir. 2000), *and United States v. Collins*, 78 F. 3d 1021, 1034 n.10 (6th Cir. 1996), *and United States v. Blandford*, 33 F.3d 685, 696 (6th Cir. 1994). There was sufficient evidence for the jury to at least conclude that Gray reached an "understanding" with McGilbra and Spellman that the gifts were in return for official acts. That circumstance suffices for liability under the Hobbs Act. *Carmichael*, 232 F.3d at 519.

### 3. Counts 33, 35: Honest Services Mail & Wire Fraud – Houston

Counts 33 and 35 are honest service mail and wire fraud charges relating to Gray's alleged involvement with the corrupt activities of Monique McGilbra and Oliver Spellman in Houston, Texas. The specific counts arise out of the following mailings or wirings:

> Count 33: a $5,000 check to ETNA Associates from Honeywell as payment for Gray's consulting services.

> Count 35: a $5,000 ETNA Associates invoice mailed to Honeywell requesting payment for Gray's consulting services.

Gray argues that the Government failed to provide evidence that the mailings and wirings

Case No. 1:04cr580
Gwin, J.

furthered a fraudulent scheme.  This argument fails.  As discussed above, the testimony of

McGilbra, and Spellman gave evidence that Gray made or requested the various mailings and

wirings to further a scheme to defraud the public of the honest service of Houston public officials.

The Government also offered substantial documentary and wiretap evidence in support of its claims.

Based on the entirety of the evidence, a rational juror could convict Gray of the honest services mail

and wire fraud charges arising out of Houston.

*L.  Challenged Jury Instructions*

Gray challenges the following aspects of the jury instructions: (1) instructions on the Hobbs

Act containing the word "bribery," (2) omitting a "quid pro quo" requirement from the Hobbs Act

instructions, (3) omitting an overt act requirement from the Hobbs Act conspiracy instructions, (4)

the instructions regarding the predicate act requirement for the RICO conspiracy charge, and (5) the

Court did not provide Gray's requested instruction on Ohio law regarding acceptance of gifts by

public officials.  Gray says the supposed errors require a new trial.  The Government disagrees,

saying the instructions were proper.  The Court agrees with the Government.

When considering a challenge to jury instructions, the Court considers whether the

instructions fairly and adequately states the controlling law.  *See United States v. Sheffey*, 57 F.3d

1419, 1429 (6th Cir. 1995) (discussing "high standard for reversal of a conviction on the grounds

of improper instructions"); *United States v. Clark*, 988 F.2d 1459, 1468 (6th Cir. 1993) (reviewing

instructions only to determine whether, as a whole, instructions are confusing, misleading, and

prejudicial).  A defendant waives a right to appellate review of instructions where he fails to make

a timely objection to a proposed instruction.  *See United States v. Jones*, 108 F.3d 668, 670 (6th Cir.

1997).

-27-

Case No. 1:04cr580
Gwin, J.

    *1. "Bribery" In Hobbs Act Instruction*

Gray objects to the Court's use of the word "bribery" in instructing the jury on the Hobbs Act charges.  Gray relies chiefly on Justice Scalia's concurring opinion in *United States v. McCormick*, 500 U.S. 257 (1991).  However, the Hobbs Act extends to bribery.  *See Evans v. United States*, 504 U.S. 225, 267 n.18 (1992); *United States v. McLeczynsky*, 296 F.3d 634, 636-37 (6th Cir. 2002); *United States v. Butler*, 618 F.2d 411, 417-18 (6th Cir. 1980).  It was not error for the Court to refer to bribery in instructing the jury.

    *2. "Quid Pro Quo" In Hobbs Act Instruction*

Gray contends that the Court "did not adequately communicate the quid pro quo necessary for conviction under the Hobbs Act under the extortion by color of official right theory." [Doc. 509 at 33].  Although the Court did not use the latin verbiage, it instructed the jurors that they could only convict on the charge of Hobbs Act conspiracy under color of official right if they found "[a] public official wrongfully obtained property to which he or she knew he or she was not entitled, knowing that the property was given in return for taking, withholding or influencing specific act or acts under color of official right." [Tr. at 1791].  This instruction sufficiently related the quid pro quo requirement.  *See Evans*, 504 U.S. at 268.

    *3. Overt Act Requirement In Hobbs Act Instruction*

Gray belatedly complains that the Court should have included an overt act requirement among its instructions on the Hobbs Act conspiracy charge.  The Court first notes that Gray waived this argument, having waited until after the Court instructed the jury to raise the issue. [Tr. at 1971-1973].  *See* Fed. R. Crim. P. 30 ("A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds

-28-

Case No. 1:04cr580
Gwin, J.

for the objection before the jury retires to deliberate . . . .  Failure to object in accordance with this

rule precludes appellate review, except as permitted under Rule 52(b) [plain error].");  *United States*

*v. Hatchett*, 918 F.2d 631, 643 (6th Cir. 1990) (ruling that where party failed to object to instruction

on timely basis, reversal required only in exceptional circumstances to avoid a miscarriage of

justice).

Even if the Court considered Gray's untimely objection, the argument would fail.  Gray

relies on the Sixth Circuit's decision in *United States v. Benton*, 852 F.2d 1456 (6th Cir. 1988).  In

*Benton*, the Sixth Circuit panel stated in dicta that "conspiracy to violate [the Hobbs Act] does

require proof of an overt act."  *Id.* at 1465.  However, an earlier Sixth Circuit decision says

otherwise.  *See United States v. Shelton*, 573 F.2d 917, 919 (6th Cir. 1978) (holding that although

the substantive crime of Hobbs Act extortion required proof that money was extorted, no such proof

was necessary to establish conspiracy under § 1951).  A more recent Sixth Circuit decision

recognizes the distinction.  *See United States v. Rogers*, 118 F.3d 466, 474 n.8 (6th Cir. 1997)

(collecting cases).

Further, the Supreme Court's recent decision in *Whitfield v. United States*, 543 U.S. 209,

2005 U.S. LEXIS 625 (2005), supports a finding that no there is no overt act requirement for a

Hobbs Act conspiracy.  In *Whitfield*, the Supreme Court reviewed 18 U.S.C. § 1956(h), which

governs conspiracies to commit money laundering.  Specifically, the Court decided whether section

1956(h) has an overt act requirement.  The Court looked to the language of the statute, which "does

not expressly make the commission of an overt act an element of the conspiracy offense . . . ." *Id.*,

2005 U.S. App. LEXIS 205, at *2-3.  The Supreme Court thus determined that section 1956(h) does

not impose an overt act requirement.

-29-

Case No. 1:04cr580
Gwin, J.

*Whitfield* guides this Court's decision.  The language of the Hobbs Act, 18 U.S.C. § 1951, does not expressly impose an overt act requirement on a Hobbs Act conspiracy.  As in *Whitfield*, the Court finds that the Government need not have proven an overt act in furtherance of Gray's Hobbs Act conspiracy.

### 4.  Predicate Act Requirement In RICO Instruction

Next, Gray complains that the jury instructions "provided no guidance as to what may be considered a predicate count for conviction" on the RICO conspiracy charge.  [Doc. 509 at 35].  The Government disagrees.  Gray's argument does not persuade.

Gray implies that because of the Court's instructions the jury based his RICO conviction on inapplicable predicate acts.  In reality, the Court instructed the jury on the predicate racketeering acts, including the Hobbs Act violations on the various alleged honest services mail and wire frauds.  [Tr. at 1756-1760].  The Court also specifically instructed the jurors on more than one occasion that they could not consider evidence regarding Gray's $5000 loan to Joseph Jones as evidence against Gray.  [Tr. at 763-764, 1769].  Gray's argument fails.

Further, Gray did not specifically object to the instructions regarding predicate acts before the jury began their deliberations.  Gray thus waived this argument under Fed. R. Crim. P. 30.

### 5.  Ohio Law Instruction

Gray says that the Court refused to instruct the jury on Ohio law regarding gifts to public officials.  Again, Gray is incorrect.

The Court directed the Government and the defense to prepare proposed jury instructions on Ohio state law.  [Doc. Nos. 491, 492].  While the Government's proposed instruction discussed Ohio's limits on gifts to officials that demonstrate an improper influence on the official, Gray's

-30-

Case No. 1:04cr580
Gwin, J.

instructions focused on the officials' reporting requirements. Based on the proposed instructions, the Court fashioned a proposed instruction on Ohio law. The defense objected to this instruction. [Tr. at 1730-1739].

It was neither error nor highly prejudicial for the Court to refuse to submit Gray's irrelevant instruction to the jury. Nate Gray was not a public official, and so his proposed instruction focusing on public officials's obligations would not have assisted the jury.

*M. Peremptory Challenge To Strike African-American From Jury*

Jackson, joined by Gray, makes a *Batson* claim, arguing that the Government improperly used a peremptory challenge to strike the only African-American member of the jury pool. The Government responds that it properly used the challenge because the juror in question knew one of the defendants and a Government witness. The Court agrees with the Government.

The juror in question indicated that she had worked on an anti-smoking campaign with Defendant Joseph Jones, and that she interacted with Jones approximately one month before the trial began. [Tr. at 21]. The juror had approximately four conversations with Jones lasting 15 to 20 minutes in the four months leading up to trial. [Tr. at 23] The juror also requested a letter from Jones's office in support of a grant the juror sought for her business. [Tr. at 22]. The juror followed media reports about the legal proceedings against Jones. [Tr. at 23]. Further, the juror's mother is a resident of East Cleveland and was very sympathetic to Government witness Emanuel Onunwor. [Tr. 30-31]. The juror also knew Onunwor. [Tr. 31].

The Government initially tried to strike the juror for cause. The Court denied this request. [Tr. at 110]. The Government then struck the juror using a peremptory challenge. The defendants objected, but the Court permitted the Government to exercise the challenge. [Tr. 118].

Case No. 1:04cr580
Gwin, J.

The defendant must make a prima facie case that the challenged the juror for a discriminatory

reason.  If the defendant makes a prima facie case, the Government must then produce a race-neutral

justification for its challenge.  The Government's reason need not be persuasive or even plausible,

it need only be a reason in which discriminatory intent is not inherent.  Finally, the Court must

decide whether the defendant has proven purposeful discrimination.  *See United States v. Yang*, 281

F.3d 534, 548-49 (6th Cir. 2002).

Even assuming that Jackson makes a prima facie case of discriminatory intent, the

Government's race-neutral justifications overcome any prima facie showing.  The defendants'

*Batson* claim fails.

*N.  Supplemental Jury Instructions*

Next, Jackson complains about the Court's supplemental instructions in response to the

jury's question regarding the Hobbs Act and Hobbs Act conspiracy claims.  The Government says

that the supplemental instructions were proper.  The Government's argument is correct.

After it began deliberations, the jury asked the following question: "Do we have [to] find that

an defendant actually committed a Hobbs Act violation in order to say he is guilty of conspiring to

commit a Hobbs Act violation?" [Tr. at 1958].  The Court responded with a supplemental instruction

based on the original instruction regarding Hobbs Act conspiracy:

> In order to convict a defendant of the crime of conspiring to commit
> a Hobbs Act violation, the government must prove the following
> elements beyond a reasonable doubt.  First, that two or more persons
> conspired, or agreed, to commit the crime of Hobbs Act violation.
> Second, that the defendant knowingly and voluntarily joined the
> conspiracy.
>
> Under the law, the government may, but is not required to, prove that
> the defendant agreed that he personally would be the one to commit

-32-

Case No. 1:04cr580
Gwin, J.

> the Hobbs Act violation.  Instead, the defendant need only have adopted the goal of furthering or facilitating the criminal endeavor, and the defendant may have done so in a variety of ways short of agreeing personally to undertake all the acts necessary for the crime's completion.

[Tr. at 1979-1980].  The jury asked no further questions on this subject.

Jackson characterizes the supplemental instruction as "improper and highly prejudicial." [Doc. 512 at 19-20].  Yet Jackson does not even attempt to demonstrate that the instruction was legally incorrect, or just how the instruction caused prejudice.  An answer to a jury's question is legally sufficient when the original instruction was correct and the court directs the jury to the instruction that answers the jury's question.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Further, the defendants make no showing that the instructions, "viewed as a whole, were confusing, misleading, and prejudicial."  *United States v. Sheffey*, 57 F.3d 1419, 1429 (6th Cir. 1995).  The instruction "fairly respond[ed] to the jury's inquiry without creating . . . prejudice."  *United States v. Nunez*, 889 F.2d 1564, 1568 (6th Cir. 1989).

The Court denies Jackson's request for a new trial on this basis.

*O.  Cumulative Error*

Both Gray and Jackson argue that cumulative error requires acquittal.  The Government disagrees.  The Court finds the Government's argument is correct.

As discussed above, the only error during the trial was that one or more of the jurors brought the Government timelines into the jury room.  The Court instructed the jurors not to consider the timelines as evidence, during opening instructions and after the jury began deliberating. The Court has already addressed this error, and found that it does not warrant acquittal or a new trial.  The

-33-

Case No. 1:04cr580
Gwin, J.

Court restates that discussion herein.

Having conducted a cumulative error analysis, the Court finds that cumulative error does not justify acquittal or a new trial.  *See Walker v. Engle*, 703 F.2d 959, 962-63 (6th Cir. 1983).

### IV. Conclusion

For the foregoing reasons, the Court DENIES Nathaniel Gray's motion to suppress search warrant [Doc. 243], motion to dismiss for prosecutorial misconduct [Doc. 327], motion to renew [Doc. 472], motion for judgment of acquittal and/or new trial [Doc. 509], and motion to arrest judgment.  [Doc. 510].  The Court also DENIES Gilbert Jackson's motion for acquittal and/or new trial.  [Doc. 512].

IT IS SO ORDERED.


Dated: November 15, 2005                    s/            *James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE